IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

WALTER E. GODWIN,

    Plaintiff,

v.                                         CIVIL ACTION NO.: CV513-134

CSX TRANSPORTATION, INC.,
a corporation,

    Defendant.

## ORDER

This cause of action is based on Plaintiff's contentions that Defendant is liable under the Federal Employers' Liability Act, 45 U.S.C. § 51, *et seq.*, for injuries he sustained when he slipped and fell during the performance of his duties on January 3, 2011, in the rice yard of Defendant's railroad facility in Waycross, Georgia. (Doc. No. 1). Presently before the Court is Defendant's Motion to Exclude Testimony of Plaintiff's Expert Witness Michael J. O'Brien. (Doc. No. 28). Plaintiff filed a Response. (Doc. No. 32).

Defendant asserts O'Brien does not provide actual expert opinions; rather, Defendant maintains, O'Brien affirms Plaintiff's version of events without employing any expert analysis. Defendant alleges O'Brien merely restates as an expert opinion "clearly understandable" Federal Railroad Administration ("FRA") regulations and speculates as to their applicability to the facts of this case. (Doc. No. 28, p. 2). Defendant also alleges O'Brien offers testimony as to causation and comparative fault which is beyond the scope of his expertise. Defendant contends O'Brien opines that

parts of the locomotive which played no role in the alleged incident violated FRA regulations. Defendant avers O'Brien's opinions are unreliable and lacking an evidentiary foundation. Defendant contends several of O'Brien's opinions are irrelevant to the issues before the Court. Accordingly, Defendant asserts O'Brien's testimony should be excluded.

In response, Plaintiff asserts O'Brien has extensive and specialized experience with "the operation at issue in this case." (Doc. 32, p. 2). Plaintiff also asserts O'Brien personally inspected the locomotive involved in the incident, studied the evidence generated in this case, and applied his specialized knowledge to the evidence in a reliable way. According to Plaintiff, O'Brien's testimony and opinions are relevant and will assist the trier of fact understand the evidence and the standards of care for the equipment involved.

## DISCUSSION AND CITATION TO AUTHORITY

In Daubert v. Merrell Dow Pharmaceuticals, Inc., the United States Supreme Court held that Federal Rule of Evidence 702 "compels the district courts to perform the critical 'gatekeeping' function concerning the admissibility of expert *scientific* evidence." United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004) (citation omitted) (emphasis in original). The Supreme Court later held "that Daubert's general holding—setting forth the trial judge's general 'gatekeeping' obligation—applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141 (1999) (citing Fed. R. Evid. 702). Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

2

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The Court of Appeals for the Eleventh Circuit has set forth a three-part inquiry for courts to consider when determining the admissibility of expert testimony. This Court must consider whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

Frazier, 387 F.3d at 1260 (citations omitted).

For the first prong, "experts may be qualified in various ways. While scientific training or education may provide possible means to qualify, experience in a field may offer another path to expert status." Id. at 1260–61; see also Fed. R. Evid. 702 (a witness may be qualified as an expert by "knowledge, skill, experience, training, or education[.]").

The reliability "criterion remains a discrete, independent, and important requirement for admissibility." Frazier, 387 F.3d at 1261. "Indeed, the Committee Note to the 2000 Amendments of Rule 702 expressly says that, '[i]f the witness is relying solely or primarily on experience, then the witness must explain *how* that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'" Id. (emphasis in original). The Supreme Court in Daubert "set out a list of 'general observations' for

3

determining whether expert testimony is sufficiently reliable to be admitted under Rule 702." United States v. Brown, 415 F.3d 1257, 1267 (11th Cir. 2005) (citation omitted). These factors or observations inquire into the expert's "theory or technique" and are: "(1) whether it can be (and has been) tested; (2) whether it has been subjected to peer review and publication; (3) what its known or potential rate of error is, and whether standards controlling its operation exist; and (4) whether it is generally accepted in the field." Id. (citation omitted). The Supreme Court also concluded that a "court *may* consider one or more of the more specific factors that Daubert mentioned when doing so will help determine that testimony's reliability." Kumho, 526 U.S. at 141 (emphasis in original). "The same criteria that are used to assess the reliability of a scientific opinion may be used to evaluate the reliability of non-scientific, experience-based testimony." Frazier, 387 F.3d at 1262 (citations omitted). "Sometimes the specific Daubert factors will aid in determining reliability; sometimes other questions may be more useful. As a result, 'the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable.'" Id. (citation omitted).

Lastly, expert opinion testimony must assist the trier of fact. Id. "By this requirement, expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person." Id. (citation omitted). However, "[s]tandards of scientific reliability, such as testability and peer review, do not apply to all forms of expert testimony." Am. Gen. Life Ins. Co. v. Schoenthal Family, LLC, 555 F.3d 1331, 1338 (11th Cir. 2009) (citing Kumho, 526 U.S. at 151). For nonscientific expert testimony, "the trial judge must have considerable leeway in deciding . . . whether

4

particular expert testimony is reliable[ ]" and "may decide that nonscientific expert testimony is reliable based upon [the purported expert's] personal knowledge or experience." Id. (internal citation omitted).

## I. Whether O'Brien is Qualified to Testify Competently

Defendant contends O'Brien, a former FRA inspector, has no expertise in mechanical engineering, ergonomics, accident reconstruction, biomechanics, or medicine. Defendant also contends O'Brien has no college degree and earned his General Equivalency Diploma ("GED") after he dropped out of high school. (Doc. No. 28, p. 5) (citing Doc. No. 28-4, pp. 51–52, 59). Defendant asserts that O'Brien never worked on the type of locomotive involved in this case because these locomotives did not exist during the time he worked in the railroad industry, and he has no specific recollection of ever inspecting these types of locomotives when he was an FRA inspector. Defendant also asserts O'Brien's former positions as an FRA inspector and a railroad employee do not qualify him to offer expert testimony about the conditions of the walkway on the date of the incident or whether Plaintiff was at fault in any way. Instead, Defendant maintains, O'Brien parrots Plaintiff's testimony about the incident and speculates that Plaintiff's version of events is correct.

Plaintiff contends O'Brien has over forty (40) years' experience in the railroad industry, during which time he learned the proper condition for locomotive passageways and steps and how to inspect and maintain these and other locomotive structures. Plaintiff also contends O'Brien is familiar with the minimum federal requirements for passageways and steps and worked for the federal agency responsible for enforcing these requirements. Plaintiff cites to O'Brien's employment history as a locomotive

AO 72A
(Rev. 8/82)

machinist, a Motive Power & Equipment ("MP&E") inspector, an MP&E safety inspector and specialist, and a consultant. (Doc. No. 32, pp. 7–9). Plaintiff asserts it is immaterial that O'Brien does not have a college degree because he offers his expert opinion based on his experience, not any educational level.

In determining whether O'Brien is qualified to render an expert opinion in this case, the undersigned reviewed the parties' briefs and supporting materials. O'Brien sets forth his experience in the railroad industry. O'Brien began his railroad career in 1968 as a machinist with the Erie Lackawanna Railroad, and his career continues to this day as a consultant on railroad matters. (Doc. No. 28-1). The undersigned notes that O'Brien does not hold a college degree, but this is not necessarily a prerequisite for O'Brien to be qualified to offer expert opinions. In addition, it is immaterial that O'Brien has no experience or expertise in the areas of mechanical engineering, ergonomics, accident reconstruction, biomechanics, or medicine. "While scientific training or education may provide possible means to qualify, experience in a field may offer another path to expert status." Frazier, 387 F.3d at 1260–61; see also Fed. R. Evid. 702 (a witness may be qualified as an expert by "knowledge, skill, experience, training, or education[.]"). O'Brien's experience in the railroad industry is extensive and consists of more than 45 years in various aspects of the industry. Of particular note, O'Brien was a maintenance and/or safety inspector for twenty (20) years' time, and he was an MP&E specialist for six (6) years. O'Brien has worked as a consultant for over ten (10) years' time and provides "technical and regulatory consulting services[.]" (Doc. No. 38-1, p. 2). O'Brien is qualified to render his expert opinion in this case based on his

6

experience in the railroad industry. However, it must be determined whether his expert opinion is admissible.

## II. Whether O'Brien's Methodology Satisfies Daubert/Reliability

Defendant states that O'Brien reviewed Plaintiff's version of the alleged incident and inspected the road locomotive more than three and a half years after the date of the alleged incident. Defendant notes O'Brien concludes, without any factual basis, that the locomotive was "in use" on the date of the incident while it was on a shop track for horn testing for purposes of FRA regulations. Defendant contends that O'Brien's opinion as to the categorization of the passageway lacks factual foundation. Defendant also contends that O'Brien's opinions are "merely given to apply FRA regulations to the locomotive and allege that violations of these regulations caused Plaintiff's injury." (Doc. No. 28, p. 10).

Plaintiff asserts O'Brien relied on facts and data he reviewed in a reliable way, in addition to his relevant railroad experience, to form his opinions in this case. Plaintiff also asserts O'Brien employed the same process in this case as he did when he inspected locomotives and investigated incidents for the FRA, including reviewing case specific materials, inspecting the equipment involved, reviewing the applicable regulations, and applying his specialized knowledge of railroad practices and procedures. Plaintiff avers O'Brien's specialized knowledge as to the regulations and industry standards which govern locomotive inspections, maintenance, and repairs is "particularly pertinent" in this case because government regulation and CSX manuals specify the proper conditions for locomotive passageways and stairs. (Doc. No. 32, p. 18). Plaintiff alleges O'Brien's experience provides a reliable foundation for his opinions

AO 72A
(Rev. 8/82)

concerning the deficiencies in the locomotive involved and Defendant's practices for inspecting and maintaining locomotives. Plaintiff also alleges a jury may choose to credit Plaintiff's testimony about the condition of the locomotive, and if it does, the jury should be informed to evaluate the significance of the walkway surface being greasy and lacking anti-slip features where Plaintiff fell.

Defendant's objection to O'Brien's methodology and practices goes to their weight, not their admissibility, and counsel can cross-examine O'Brien during the trial of this case. Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Quiet Tech. DC-8, Inc., v. Hurel-Dubois UK Ltd., 326 F.3d 1333, 1341 (11th Cir. 2003) (internal punctuation and citations omitted). Though he could be more precise, a review of O'Brien's reports reveals how his experience led him to his opinions. (Doc. No. 28-2). In addition, his practices are reliable. However, this finding does not necessarily mean O'Brien's testimony will be admissible at trial.

### III. Whether O'Brien's Testimony will Assist the Trier of Fact

Defendant maintains that the FRA regulations upon which O'Brien relies are clearly worded and easily understandable, and O'Brien's testimony as to the applicability of these regulations will not assist the jury. Defendant contends that O'Brien should not be allowed to instruct the jury on the law, as that is for the trial judge to do.

Plaintiff asserts the facts at issue in this case include whether the locomotive was in a safe condition, whether Defendant was negligent in its practices relating to the inspection, maintenance, and safety, and whether Defendant violated federal

8

regulations pertaining to this locomotive. Plaintiff alleges O'Brien's opinions relate to whether: the walkway had anti-slip treatment and features required by the standard of care; the presence of greasy liquid on a locomotive walking surface in the area where the Plaintiff fell is an unsafe condition which deviates from the applicable standard of care; and a proper inspection of the locomotive would have uncovered these hazards to safe and secure footing. According to Plaintiff, the only jurors who will have a working knowledge of the railroad procedures or the proper condition of locomotive walking surfaces are those potential jurors who have worked in or closely studied the railroad industry.

Contrary to Defendant's assertion, the Federal Regulations at issue are not so plainly worded that the average lay person could understand them. Rather, O'Brien's testimony as to what regulations are applicable and what, if any, standard of care Defendant owed to Plaintiff would be helpful to the trier of fact and is admissible. Nevertheless, O'Brien shall not be permitted to provide testimony as to whether Defendant breached that duty of care, causing Plaintiff to slip and fall and injure himself. Such testimony reaches a legal conclusion in this case, and that conclusion rests with the trier of fact. In addition, O'Brien did not inspect the site of Plaintiff's alleged accident and injury until more than three and a half years later, and there is nothing before the Court, other than Plaintiff's testimony, as to the condition of this area at that time. Accordingly, O'Brien cannot testify as to the condition of the walkway on January 3, 2011, as such testimony would be speculative and duplicative of Plaintiff's testimony. However, O'Brien can offer his opinion in response to any hypothetical question as to

9

conditions of the walkway and how those hypothetical conditions would violate any applicable regulations.[1]

## CONCLUSION

Based on the foregoing reasons, Defendant's Motion to Exclude Testimony of Plaintiff's Expert Witness Michael O'Brien is **GRANTED** in part and **DENIED** in part.

**SO ORDERED**, this 18th day of August, 2015.

_____
JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

---

[1] Defendant also seeks to exclude portions of O'Brien's testimony which are irrelevant to the matters before the Court. As a general rule, irrelevant testimony is not admissible during the trial of any case. Fed. R. Evid. 402 ("Irrelevant evidence is not admissible."); Fed. R. Evid. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."). Counsel for Defendant can voice any objections to O'Brien's testimony on relevance grounds during the trial of this case.

AO 72A
(Rev. 8/82)